DENNIS LOONEY *vs.* DENNIS QUILL ET AL.

DENNIS QUILL *vs.* DENNIS LOONEY ET AL.

EQUITY.   Nos. 8034 and 8193.

{ Decided December 17, 1883.
{ The CHIEF JUSTICE and Justices HAGNER and COX sitting.

Where different parcels of land, all subject to a common incumbrance, are conveyed to successive purchasers at different dates, the proceeds of the land must be applied in the inverse order of alienation to satisfy the first incumbrance; thus, L., being the owner of a lot of ground, gave a first deed of trust on the whole of it to Y. He then gave a second trust on a part of it to Q. Still later he conveyed the whole lot, except the part covered by Q.'s deed, to W.

*Held,* That the part conveyed to W. ought to be applied to satisfying the first incumbrance covering the whole property, before disturbing the part covered by Q.'s trust.

THE CASE is stated in the opinion.

T. F. MILLER, H. B. MOULTON, W. PIERCE BELL and A. B. DUVALL for Looney.

T. J. MILLER, R. B. LEWIS and W. R. RILEY for Quill.

Mr. Justice Cox delivered the opinion of the court.

In the case of Dennis Looney *vs.* Dennis Quill, and others, and Dennis Quill *vs.* Dennis Looney and others, the facts out of which the litigation grew seem to be about as follows: Dennis Looney was the owner of two lots, Nos. 13 and 14, in square 624, which had a front of sixteen feet by a depth of one hundred and seventy-five feet. While he was so seized, he executed a deed of trust covering the whole property, to secure an indebtedness of a thousand dollars to Alexander H. Young. This was in 1874. In August, 1880, he executed a deed of trust to secure an indebtedness to Dennis Quill, of fifteen hundred dollars, on the front portion of these lots to the depth of one hundred and twenty-four feet. Afterwards, in March, 1882, he conveyed in fee simple to Johanna Wolf, the rear part of the lots, having a depth of fifty-one feet, in addition to the other depth I have already mentioned.

This litigation was commenced by a bill filed by Dennis Looney himself, against Quill and others to set aside certain

sales made by the trustees under Quill's deed. That was done; so that that case is out of the question and does not present any question for our determination. After this, Quill, who had the second deed of trust on a part of the property, filed his bill to marshal the assets, asking that the part conveyed to Mrs. Wolf by the third deed I have mentioned, should be first applied to the satisfaction of the common encumbrance that covered the whole property, before that part should be disturbed on which he, Quill, had the second deed of trust. Mrs. Wolf came in, by petition, and was made a party defendant, and claimed that she had purchased the property and taken her conveyance, in ignorance of the existence of any encumbrance, and that, as an innocent purchaser, she had a right to ask that Young be compelled to exhaust his security upon the front portion of the property, being the first parcel that was conveyed away by Looney, before resorting to the part that was conveyed to her.

The case went to the auditor. The court, in the first place, decreed that the whole property should be sold, but in two separate parcels, just according to the deeds I have mentioned, one parcel being that in the deed of trust to secure Quill, being the front part of the lots having a depth of one hundred and twenty-four feet, and the second being the rear portion which was conveyed to Mrs. Wolf, having a depth of fifty-one feet; and the property was sold and the proceeds brought into court, and the case referred to the auditor to apply the proceeds according to the established rules of law. The auditor took the view which is maintained by the complainant, that the proceeds of the part conveyed to Mrs. Wolf by the last deed, ought to be first applied to satisfying the first encumbrance covering the whole property; Mrs. Wolf excepted to this report, and the exception was overruled and the auditor's report affirmed by the decree below, from which the appeal is taken to this court.

So that the case is simply this: Looney, the debtor, first gave a deed of trust on the whole of his property; next, he gave a deed of trust on a part of it to Quill; and third, he

conveyed the remaining part to Mrs. Wolf. Now the question is whether Quill has a right to require that the part last conveyed—Mrs. Wolf's part—should be first applied towards satisfying Young's first encumbrance, or has she a right to claim that the part conveyed before her deed, be exhausted before her part is resorted to.

The case appears to be, at first, a little complicated by another circumstance, and that is, that Quill, when he took the first junior encumbrance on a part of this property, took, in the same deed, an encumbrance on other property outside. Undoubtedly Mrs. Wolf would have a right to require him to exhaust that first. But that had been exhausted and yielded almost nothing; consequently that does not embarrass the controversy, but leaves it simply a case of two junior alienees of parcels of property covered by a previous encumbrance.

Now, the doctrine that in the case of different parcels of land, all subject to a common encumbrance, conveyed to successive purchasers at different dates, the proceeds of the land shall be applied in the inverse order of alienation to satisfy the first encumbrance, it is entirely unnecessary to discuss, because it is not a new doctrine. It is the established law of this court, and has been settled for this District by the Supreme Court of the United States in a rather recent case. The authorities on this question, which are numerous, are collected in the case of Aldrich vs. Hooper, in 2 Leading Cases in Equity, and they make no distinction, so far as we have been able to observe, between successive encumbrances by the way of deeds of trust, and successive alienees in fee simple or for lesser absolute estates, and I have never found any case which made distinction between them. The controversy generally has been whether the first encumbrance, covering the whole property, should be borne ratably by the subsequent successive alienees, or the rule should be what I have already stated, viz., that the property should be applied in the inverse order of alienation. The latter is the doctrine which has the great weight of authority in its favor; but there is no authority for the prop-

osition that the last alienee of part of the land is entitled to have the first encumbrance thrown first on a prior alienee, which is what Mrs. Wolf is contending for in this case. We think the auditor was right, and the court below was right, in making the application of the proceeds of Mrs. Wolf's property, even supposing her purchase to be a *bona fide* one, to the satisfaction of Young's encumbrance, before the proceeds of Quill's part could be applied to the same encumbrance. But I believe we are all more than doubtful about the *bona fides* of the deed to Mrs. Wolf. It rather seems to us to have been a deed without consideration, and to have been made for the purpose of shielding this property from the claims of creditors, and if that is so, it is to be dealt with as property remaining in the hands of the debtor, the mortgagor. There is no doubt about the rule that the junior encumbrancer of a part of the property included in the first encumbrance would have the right to require the remaining property in the hands of the debtor to be applied to satisfying the first encumbrance before that covered by his own is resorted to.

The decree below is affirmed.